AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by ___TM___ D.C.

APR 15 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Luis Angel ROMERO-MARTINEZ, | ) | Case No. 11-8111-JMH |
| Marcelo Garrido REYES, and | ) | |
| Alberto MARTIN-MENENDEZ, | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 13, 2011__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1); all in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) | Conspiracy to Possess with Intent to Distribute at least 500 grams of a mixture and substance containing a detectable amount of cocaine. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Alexander Pagan*
Complainant's signature

DEA Special Agent Alexander Pagan
Printed name and title

Sworn to before me and signed in my presence.

Date: __04/15/2011__

*James M. Hopkins*
Judge's signature

City and state: __West Palm Beach, Florida__   __U.S. Magistrate Judge James M. Hopkins__
Printed name and title

## **AFFIDAVIT**

Your affiant, Alexander Pagan, a Special Agent with the United States Drug Enforcement Administration (DEA), being duly sworn, states as follows:

1. I am a Special Agent with the DEA. As such, I am a "law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code.

.2. Your affiant has been employed with the DEA since May of 2003. Your affiant has received training in different areas, including, drug identification and methods of drug trafficking, packaging and distribution. I have also been involved in investigations concerning the possession, manufacture, and distribution of controlled substances.

.3.    The information contained in this affidavit is based on my own personal knowledge as well as information provided to me by a confidential source and other law enforcement officers. This affidavit is being submitted for the limited purpose of establishing probable cause to charge Luis Angel **ROMERO-MARTINEZ**, Marcelo Garrido **REYES**, and Alberto **MARTIN-MENENDEZ** with conspiring to possess with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of cocaine, in violation Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). As such, this affidavit does not contain all the facts known to me relating to this investigation.

.4. In approximately August 2010, Agents from the DEA Ft. Lauderdale Office

began receiving information from a Confidential Source ("CS") regarding a Mexican male, known to the CS as "Marcelo." The CS said "Marcelo," who was later identified as Marcelo Garrido **REYES,** was a cocaine trafficker operating in the Palm Beach County area. The CS further advised that Marcelo Garrido **REYES's** source of supply was a Mexican male known to the CS as "PELON," who was later identified as Luis Angel **ROMERO-MARTINEZ**. The CS had subsequent conversations with Luis Angel **ROMERO-MARTINEZ** and Marcelo Garrido **REYES** about doing a three kilogram cocaine transaction. The CS and Marcelo Garrido **REYES** made arrangements to conduct the cocaine transaction on April 13, 2011.

.5. On April 13, 2011, at approximately 1:50 p.m., the CS placed a call to Marcelo Garrido **REYES,** which was recorded. During this call, the CS and Marcelo Garrido **REYES** agreed to conduct the cocaine transaction at Marcelo Garrido **REYES**'s residence (4784 Ranch Way, West Palm Beach, FL inside the Holiday Ranch mobile home park).

.6. On April 13, 2011, at approximately 1:55 p.m., the CS left for Marcelo Garrido **REYES**'s residence in his/her vehicle. Prior to leaving for Marcelo Garrido **REYES**'s residence, Agents searched the CS's person and vehicle for contraband. Agents did not find any contraband on the CS's person. Agents did not find any contraband in the CS's vehicle. The CS was equipped with an audio recording device. Agents maintained visual surveillance on the CS as he/she traveled to Marcelo Garrido **REYES**'s residence.

.7. Agents observed a Lincoln Navigator traveling inside the mobile home park toward Marcelo Garrido **REYES**'s residence. Approximately one minute later, agents observed the Lincoln Navigator traveling toward the entrance/exit of the mobile home park. Agents observed the Lincoln Navigator and the CS's vehicle stop next to each other at the entrance/exit to the mobile home park for approximately two minutes. Agents then observed the CS's vehicle enter the Holiday Ranch mobile home park. The Lincoln Navigator traveled in a different direction. Around this same time, the CS contacted your affiant and advised him that Luis Angel **ROMERO-MARTINEZ** was in the Lincoln Navigator and that he (Luis Angel **ROMERO-MARTINEZ**) was going to get the cocaine.

.8. Shortly thereafter, the CS arrived at Marcelo Garrido **REYES**'s residence at which time the CS entered the residence. At approximately 2:12 p.m., surveillance units observed the Lincoln Navigator arrive at a residence located at 6119 Westover Rd., West Palm Beach, FL. Due to a brief lapse in visual surveillance, agents were not able to determine whether anyone exited and/or entered the Lincoln Navigator or the residence. After visual surveillance was re-established, agents observed the Lincoln Navigator leave the area of 6119 Westover Road and travel to Marcelo Garrido **REYES**'s residence (4784 Ranch Way, West Palm Beach, FL).

.9. Agents observed a male, later identified as Luis Angel **ROMERO-MARTINEZ**, exit the driver side of the Lincoln Navigator carrying a blue container. Agents also observed a second male, later identified as Alberto **MARTIN-MENENDEZ**,

3

exit the Lincoln Navigator, and a third male, later identified as Pablo **SUAREZ**, exit the Lincoln Navigator. Luis Angel **ROMERO-MARTINEZ**, Alberto **MARTIN-MENENDEZ**, and Pablo **SUAREZ** entered Marcelo Garrido **REYES**'s residence.

.10. While inside the residence, Luis Angel **ROMERO-MARTINEZ** showed the CS a kilogram of cocaine. The CS advised that the cocaine was inside a clear sealing bag which was inside of a small box which was contained in a blue plastic bag. The CS asked about the remaining two kilograms of cocaine. Alberto **MARTIN-MENENDEZ** told the CS that he (Alberto **MARTIN-MENENDEZ**) did not want to bring all three kilograms of cocaine.

.11. The CS thereafter cut open the kilogram and inspected it. The CS questioned Alberto **MARTIN-MENENDEZ** about whether the kilogram had been repackaged. The CS also told Alberto **MARTIN-MENENDEZ** that he/she thought the cocaine was poor quality. Alberto **MARTIN-MENENDEZ** told the CS that it (the kilogram of cocaine) was good quality and that the CS could cook it into crack cocaine there at the residence. The CS declined the offer and advised all parties that the he/she was going to get the money to purchase the kilogram of cocaine.

.12. At approximately 2:42p.m., your affiant was contacted by the CS, who advised him that he/she had observed a kilogram of cocaine inside the kitchen area of the residence. Your affiant relayed this information to other agents.

.13. After receiving this information, agents began to move in closer to the residence. As agents were approaching Marcelo Garrido **REYES**'s residence (4784

4

Ranch Way, West Palm Beach, FL), a Hispanic male, later identified as Marcelo Garrido **REYES** was observed opening a door of the residence, looking in the direction of a surveillance agent's vehicle, and rapidly shutting the door. Due to safety concerns, Agents began giving verbal commands *via* a loudspeaker advising the subjects in the house to exit. A Spanish-speaking agent arrived on scene and began giving the same commands in Spanish. Shortly thereafter, Pablo **SUAREZ**, Luis Angel **ROMERO-MARTINEZ,** Alberto **MARTIN-MENENDEZ,** and Marcelo Garrido **REYES** all exited the trailer and were taken into custody.

.14. At approximately 3:11 p.m., Agents conducted a protective sweep of the residence to ensure that there were no other individuals inside the residence at 4784 Ranch Way, West Palm Beach, FL. During the protective sweep, Agents did not locate anyone else inside the residence. At approximately the same time, Marcelo Garrido **REYES** gave verbal consent to search his residence.

.15. During a search of Marcelo Garrido **REYES**'s residence, Agents discovered a small amount of a white powdery substance on the toilet seat in the bathroom. The white powdery substance tested positive for the presence of cocaine. Agents also noticed water around the toilet bowl area indicating that the cocaine had been flushed. During the search, agents located and seized a blue bag from behind the refrigerator which further contained a clear plastic sealing bag that had been cut open. A field test was performed on the blue bag and the clear plastic sealing bag. The clear plastic sealing bag tested positive for the presence of cocaine, however, blue bag, which was

still wet, did not test positive for the presence of cocaine.

.16.   Following Marcelo Garrido **REYES**'s arrest, he gave a post-arrest statement to your affiant and DEA S/A Michael Mancuso. Palm Beach County Sheriff's Office Deputy Jairo GOMEZ was also present for a portion of the interview. Prior to any questioning, Marcelo Garrido **REYES** was advised of his rights under *Miranda* in Spanish by your affiant. Your affiant utilized the standard DEA Miranda card for that purpose. Marcelo Garrido **REYES** verbally acknowledged that he understood his rights and agreed to speak with agents without an attorney being present.

.17.   Marcelo Garrido **REYES** stated that during the past week the CS asked him (Marcelo Garrido **REYES**) if he would be able to obtain and/or arrange for the sale of three kilograms of cocaine to the CS. Marcelo Garrido **REYES** admitted to brokering the sale of a kilogram of cocaine on this same date (April 13, 2011) which was initially supposed to be a sale of three kilograms of cocaine. Marcelo Garrido **REYES** said "Luis" (Luis Angel **ROMERO-MARTINEZ**) arrived at his residence with two other individuals and that Luis Angel **ROMERO-MARTINEZ** brought the kilogram of cocaine into his residence. Marcelo Garrido **REYES** said the cocaine was contained inside a blue bag. Marcelo Garrido **REYES** said after some discussion, the CS departed the residence. A short time later, Marcelo Garrido **REYES** said he (Marcelo Garrido **REYES**) opened the door to his residence and observed the police outside. Marcelo Garrido **REYES** said he shut the door and alerted the other occupants about the police. Marcelo Garrido **REYES** said Luis Angel **ROMERO-MARTINEZ** and the other two

individuals began flushing the cocaine down the toilet.

.18.  Following Luis Angel **ROMERO-MARTINEZ**'s arrest, he gave a post-arrest statement to your affiant and DEA S/A Michael Mancuso.  Prior to any questioning, Luis Angel **ROMERO-MARTINEZ** was advised of his rights under *Miranda* by your affiant.  Your affiant utilized the standard DEA Miranda card for that purpose.  Luis Angel **ROMERO-MARTINEZ** verbally acknowledged that he understood his rights and agreed to speak with agents without an attorney being present.  In regards to the cocaine transaction, Luis Angel **ROMERO-MARTINEZ** said approximately two or three days ago, Marcelo Garrido **REYES** told him that he had someone (the CS) who wanted three kilograms of cocaine.  Luis Angel **ROMERO-MARTINEZ** said he called "Papi" (Alberto **MARTIN-MENENDEZ**) that day (April 13, 2011) and asked him if he would be able to supply him with three kilograms of cocaine.  Luis Angel **ROMERO-MARTINEZ** said Alberto **MARTIN-MENENDEZ** agreed to conduct the transaction, but that he (Alberto **MARTIN-MENENDEZ**) would only bring one kilogram of cocaine at that time.  Luis Angel **ROMERO-MARTINEZ** said he picked up Alberto **MARTIN-MENENDEZ** and another individual at Alberto **MARTIN-MENENDEZ**'s residence and traveled with them to Marcelo Garrido **REYES**'s residence.  Luis Angel **ROMERO-MARTINEZ** said Alberto **MARTIN-MENENDEZ** brought the kilogram of cocaine in a blue bag.

.19.     After they arrived at Marcelo Garrido **REYES**'s [residence] Alberto **MARTIN-MENENDEZ** gave him (Luis Angel **ROMERO-MARTINEZ**) the blue bag with the kilogram of cocaine because he was friends with Marcelo Garrido **REYES**.  Once inside

7

the residence, the CS inspected the cocaine and subsequently departed the residence. Luis Angel **ROMERO-MARTINEZ** said the price for the kilogram of cocaine was $32,000 and that he (Luis Angel **ROMERO-MARTINEZ**) stood to make $200 for this transaction.

WHEREFORE, based on the foregoing facts and information, your affiant submits that probable cause exists to charge Luis Angel **ROMERO-MARTINEZ**, Alberto **MARTIN-MENENDEZ**, and Marcelo Garrido **REYES** with conspiracy to possess with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of cocaine, in violation Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).

FURTHER YOUR AFFIANT SAYETH NAUGHT

*Alexander Pagan*
Alexander Pagan, Special Agent
Drug Enforcement Administration

Sworn to before me
this 15th day of April, 2011,
in West Palm Beach, Florida

*James M. Hopkins*
James M. Hopkins
United States Magistrate Judge

8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 11-8111-JMH

### BOND RECOMMENDATION

DEFENDANT: Luis Angel ROMERO-MARTINEZ

_Pre-trial Detention_
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   William T. Zloch

Last Known Address: _____

_____

_____

What Facility:   _____

_____

Agent(s):   DEA S/A Alexander Pagan
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 11-8111-JMH

### BOND RECOMMENDATION

DEFENDANT: Marcelo Garrido REYES

*Pre-trial Detention*

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: William T. Zloch

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   DEA S/A Alexander Pagan
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 11-8111-JMH

### BOND RECOMMENDATION

DEFENDANT: Alberto MARTIN-MENENDEZ

_Pre-trial Detention_
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   William T. Zloch

Last Known Address: _____

_____

What Facility: _____

_____

Agent(s):   DEA S/A Alexander Pagan
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 11-8111-JMH

UNITED STATES OF AMERICA

vs.

LUIS ANGEL ROMERO-MARTINEZ,
MARCELO GARRIDO REYES, and
ALBERTO MARTIN-MENENDEZ,

        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

BY: _____
        WILLIAM ZLOCH
        ASSISTANT UNITED STATES ATTORNEY
        Florida Bar No. 0105619
        500 S. Australian Avenue, Suite 400
        West Palm Beach, FL 33401-6235
        Tel: (561) 820-8711
        Fax: (561) 820-8777
        William.Zloch@usdoj.gov